### NORTZ v. MILLER, Alien Property Custodian, et al.

(District Court, S. D. New York. December 19, 1921.)

1. War ⬤12—Alien cannot enforce debt against funds in hands of Alien Property Custodian.

Under Trading with the Enemy Act, § 9, subd. (e), as amended by Act June 5, 1920, providing that no debt shall be allowed under that section as to claimants other than citizens of the United States, unless it arose with reference to the property held by the Alien Property Custodian or the Treasurer of the United States, a creditor of an alien enemy whose seat on the Coffee Exchange had been sold by the Alien Property Custodian, cannot have the balance due in the Custodian's hands applied to the payment of his claim, where there was no showing it was other than a simple contract debt, or that it related in any way to the seat on the exchange, since it was within the power of Congress to give the preference to citizens it did by that act, and a construction giving such preference is not absurd.

2. Constitutional law ⬤170—Preventing enforcement of claim against funds in hands of Alien Property Custodian does not impair contract.

The provision of Trading with the Enemy Act, § 9, subd. (e), as amended by Act June 5, 1920, preventing the enforcement of claims in favor of other aliens against property in the hands of the Alien Property Custodian, does not impair the obligation of the contract out of which those claims arose.

3. Constitutional law ⬤113—Provision against impairing contract obligation does not extend to Congress.

The prohibition of laws impairing the obligation of contracts is expressly directed at state action, and does not apply to Congress which may pass laws directly or indirectly impairing the obligation of contracts.

In Equity. Suit by F. Eugen Nortz against Thomas W. Miller, as Alien Property Custodian, and others, to have applied to the payment of plaintiff's claim against Eduard Seeliger the balance in the hands of the Alien Property Custodian after sale of the assets of the debtor. Complaint dismissed.

Decree affirmed 285 Fed. 781.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Paul C. Schnitzler, of New York City, for plaintiff.

William Hayward, of New York City, for defendants Miller and White.

KNOX, District Judge. Plaintiff is a citizen of Germany, resident within the United States. The defendant Eduard Seeliger is a citizen and resident of Germany, and formerly was a member of the New York Coffee Exchange. In the course of dealings had with plaintiff prior to January, 1914, Seeliger became indebted to plaintiff in the sum of 244,828 French francs. Such indebtedness is admitted by Seeliger to be due and owing to plaintiff.

Under the provisions of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½ff, 3115½g– 3115½j), Seeliger was an alien enemy. After the outbreak of the war and before the treaty of peace was signed, the membership of Seeliger on the Coffee Exchange was sold for $4,475, and of this sum the amount of $2,623.93 was on March 2, 1918, paid to the Alien Property Custodian.

On November 24, 1920, plaintiff, claiming to be entitled so to do under the provisions of section 9 of the Trading with the Enemy Act, filed with the defendant Miller, as Alien Property Custodian, a notice of claim, and made application to the President of the United States that the said sum of $2,623.93 be paid over to him in part satisfaction of the debt due to plaintiff by said Seeliger. These demands of plaintiff not having been complied with, plaintiff has filed a bill of complaint against the Alien Property Custodian and the Treasurer of the United States and Seeliger, wherein he demands judgment that the interest, right, title, or claim of the plaintiff in and to said sum of $2,623.93 be established as against the defendant, and that said amount be retained in the custody of the Alien Property Custodian or in the treasury of the United States until final decree herein, and be paid over to plaintiff in part payment of its claim.

The aforesaid Custodian and Frank White, as Treasurer of the United States, have filed a motion to dismiss plaintiff's complaint upon the ground that it affirmatively appears therein that plaintiff is a citizen of a country other than the United States, and that the claim whereon he seeks to recover did not arise with reference to money or other property held by the Alien Property Custodian or the Treasurer of the United States. The plaintiff in turn has filed a motion for the dismissal of the defendant's motion and for judgment in favor of the plaintiff.

[1] Under subdivision (e) of section 9 of the Trading with the Enemy Act, as amended by Act June 5, 1920, c. 241, 41 Stat. 977, it is provided that:

"No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owed by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States, unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States thereunder."

So far as appears from the complaint herein, the claim of the plaintiff grows out of some contractual relationship which existed between him and Seeliger, and without any reference to the money which represents the proceeds of the sale of Seeliger's seat upon the New York Coffee Exchange. In view of this fact I do not see how it is possible for a portion of the debt owed by Seeliger to Nortz to be allowed out of the moneys in the hands of the Alien Property Custodian. Plaintiff, as before stated, is not a citizen of the United States, but of Germany. Except as to the money and property of an alien enemy, with respect to which the claim of a noncitizen of the United States arose by way of lien or otherwise, I have no doubt that it was the intention of Congress in the legislation above quoted to prefer, as against other captured money and property of an alien enemy, the claims existing in favor of and the debts owing to citizens of the United States. There is, as I can see, no reason why Congress should not do this, and, having done this, why the courts should not effectuate such purpose. The United States had the right to capture the money of Seeliger, and it also has a right to say when and by whom, if at all, such money may be resorted to for the payment of debts owed by the alien enemy whose property has been seized. So far, a citizen of Germany resident in the United States has not been accorded that right.

It is suggested that such a construction leads to an absurd result, in that—

"say a Swiss citizen, who has all his life lived and done business here, would be barred from claiming payment out of the seized property of his German customer, who happened to be in Germany during the war, solely on the ground that he is not an American citizen."

One answer to this is that it is neither unusual nor absurd for a sovereignty to give to its own citizens rights and privileges which are denied to foreigners.

[2, 3] Furthermore, it is argued upon behalf of plaintiff that any legislation of Congress, restricting the right of creditors to recover, out of the seized property of their debtors, their debts, would be unconstitutional in respect to claims arising prior to the date upon which the Trading with the Enemy Act became a law, upon the ground that there would be an impairment of the obligation of contract. I fail to see that there is here involved any impairment of contractual obligation. Plaintiff's cause of action against Seeliger remains; but if, under any view, it should be thought that any impairment of contractual obligation has resulted, that fact cannot avail the plaintiff. Congress can, and often has, without impinging upon any constitutional guaranty, impaired the obligation of contracts which, when made, were binding upon the parties thereto. As is said in 12 Corpus Juris, § 594:

"The prohibition of laws impairing the obligation of contracts is expressly directed at state action, and does not apply to Congress, which may pass laws directly, or indirectly, impairing the obligation of contracts"—citing Louisville, etc., R. Co. v. Mottley, 219 U. S. 474, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671, and numerous other cases.

From what has been said, I am called upon to deny plaintiff's motion, and to grant that made upon behalf of the Alien Property Custodian and the Treasurer of the United States.